UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

FILED
JAN 0 8 2019
CLERK, U.S. DISTRICT CLERK
WESTERN DISTRICT OF TEXAS
BY_____ DEPUTY

CHRIS QUINN, Trustee for the
CryptoMetrics, Inc. Creditors' Trust,

Plaintiff,

v.                                                Civil Case No. 5:13-834

SCANTECH IDENTIFICATIONS
BEAM SYSTEMS LLC et al.,

Defendants.

## MEMORANDUM OPINION

This lawsuit arises from the bankruptcy of CryptoMetrics, Inc. Plaintiff Chris Quinn serves as trustee. Defendants Joel Shaw, Michael Vitale, Robert Barra, and Susan Barra were CryptoMetrics executives. Defendant Michael Stolzar, of defendant firm Karlen & Stolzar, LLP, was CryptoMetrics's lawyer. Defendants ScanTech Security LLC, ScanTech Identifications Beam Systems LLC, and ScanTech Holdings, LLC were related companies who dealt with CryptoMetrics. Defendants Mike Yaqub and Suzan Yaqub were ScanTech executives.

Quinn claims Shaw, Vitale, and the Barras' waste, mismanagement, and self-dealing forced CryptoMetrics into bankruptcy. Quinn also claims Robert Barra and Shaw enlisted ScanTech agents to bribe Middle Eastern officials and businessmen. And Quinn claims Stolzar helped implement their schemes, drafting fraudulent documents and lying about CryptoMetrics's finances to investors and lenders. So Quinn brought this adverse action with fourteen distinct claims: five claims to avoid and recover fraudulent transfers under state and federal law; a breach of fiduciary duty claim; an aiding-and-abetting breach of fiduciary duty claim; a civil conspiracy claim; three civil RICO claims; an unjust enrichment claim; and a legal malpractice claim.

Over two prior opinions, the Court determined Quinn lacked standing to bring the civil conspiracy, unjust enrichment, and legal malpractice claims. The Court also found the *in pari delicto* doctrine barred the breach of fiduciary duty and civil RICO claims against Stolzar and his firm. This resolved all claims against Stolzar and his firm. And Quinn settled with Vitale and the Barras, moving to voluntarily dismiss all claims against them. But Quinn's remaining claims against Shaw, the Yaqubs, and the ScanTech companies persist.

The ScanTech companies recently moved for judgment on the pleadings for the two pending claims against them: a civil RICO claim and a civil RICO conspiracy claim based on Robert Barra and Shaw's illegal payments to ScanTech to facilitate bribing Middle Eastern officials and businessmen. ScanTech argues the *in pari delicto* doctrine bars these claims since Quinn seeks to recover for CryptoMetrics's own RICO violations. Yet Quinn claims the adverse interest exception to that doctrine should apply, alleging for the first time in his opposition that the bribes were intended to generate revenue for Barra and Shaw's personal start-up, not for CryptoMetrics.

I

The Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968 (RICO), criminalizes use in interstate commerce of income derived from acts involving bribery chargeable under state law and punishable by more than one-year imprisonment. §§ 1961(1); 1962. And the statute allows corporations to sue violators for injuries they cause. § 1964(c).

But if the corporation participated in the RICO violation, the equitable doctrine *in pari delicto* blocks recovery. So since a senior executive's actions impute to the corporation if relevant to the executive's employment and intended to benefit the corporation, *see In re*

*Hellenic Inc.*, 252 F.3d 391, 395 (5th Cir. 2001), *in pari delicto* bars most civil RICO claims by corporations whose own executives violated the law. *See Rogers v. McDorman*, 521 F.3d 381, 394-95 (5th Cir. 2008). And because a bankruptcy trustee "stands in the shoes of the debtor," the bar applies "with equal force to a trustee-in-bankruptcy." *Official Comm. of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145, 1151 (11th Cir. 2006).

Yet if an executive's illegal acts were solely self-interested, and completely adverse to the corporation, their violation does not impute to the corporation. Thus *in pari delicto* would not thwart the claim. *See F.D.I.C. v. Shrader & York*, 991 F.2d 216, 223-24 (5th Cir. 1993). But this "adverse interest" exception requires the executive to have totally abandoned the company's interests. *Id.* In other words, if the executive's RICO violation benefitted the corporation at all, the exception does not apply.

Indeed, under New York law—the operative law here, since courts "look to state law to ascertain when wrongful conduct should be imputed to a corporation," Mem. Op. at 34 n.6, ECF No. 31 (quoting *Nisselson v. Lernout*, 469 F.3d 143, 154 (1st Cir. 2006))—the adverse interest exception applies only to "outright theft or looting or embezzlement." *Kirschner v. KPMG LLP*, 938 N.E.2d 941, 952 (N.Y. 2010) (deeming it the "most narrow of exceptions"). Simply put, the RICO violation must have been "committed *against* a corporation rather than on its behalf." *Id.* Even an executive's self-interested intentions bear no moment. *Id.* (citing *Price v. Keyes*, 62 N.Y. 378, 384 (1875)).

## II

*In pari delicto* thwarts Quinn's attempts to recover CryptoMetrics's payments to the ScanTech companies. At bottom, his complaint alleges CryptoMetrics violated RICO when

Shaw and Robert Barra paid ScanTech to bribe foreign officials for contracts intended to advance CryptoMetrics's interests. *See, e.g.*, Am. Compl. ¶¶ 6–8, 185–188, 193–206, 339–355, ECF No. 1-5. Though the scheme ultimately failed, Quinn (standing in CryptoMetrics's shoes) cannot now recover the lost—but still illegal—payments.

Quinn's invocation of the adverse interest exception falls flat for two reasons. Procedurally, though Quinn now argues "CryptoMetrics was not actually [the bribes'] intended beneficiary," but rather their "intended victim," Pl.'s Resp. 2, ECF No. 84, his complaint lacks—and actually contradicts—that claim. *Compare id.* ("While the defendants used CryptoMetrics funds to pay the bribes, the purpose of the scheme was to obtain favorable security contracts not for CryptoMetrics itself, but for [ScanTech] and a newly created company . . . entirely owned by Defendants Barra and Shaw personally."), *with, e.g.*, Am. Compl. ¶ 340 ("ScanTech Holdings, ScanTech IBS, and CryptoMetrics formed an association-in-fact . . . for the express purpose of pursuing business opportunities in the Middle East and for the mutual benefit of ScanTech Holdings, ScanTech IBS, and CryptoMetrics."). And to decide a motion for judgment on the pleadings, a court may consider only facts in the complaint or facts capable of judicial notice. *See Machete Prods., L.L.C. v. Page*, 809 F.3d 281, 287 (5th Cir. 2015). Quinn's new claim—made for the first time in opposition to ScanTech's motion for judgment on the pleadings—falls in neither category.

Secondly, even if Quinn included the allegation in his amended complaint, the adverse interest exception would still fall short substantively. Under New York law, an executive's self-interested intent is immaterial; the exception fails if any benefit redounded to the corporation. *See Kirschner*, 938 N.E.2d at 952. And here, although Quinn claims the bribery scheme ultimately hurt CryptoMetrics, he concedes one "benefit obtained by CryptoMetrics through [the

4

scheme] was a single minor security contract." Am. Compl. ¶ 5; *see also* at p.74 (noting "CryptoMetrics obtain[ed] *minimal* benefit from the Yaqub bribes" (emphasis added)). That is enough to sunder the adverse interest exception. *In pari delicto* stymies Quinn's civil RICO claims against the ScanTech companies.

### III

The Court will grant the ScanTech companies' motion for judgment on the pleadings. A separate order follows.

Date: January 8, 2019

                                                  Royce C. Lamberth
                                                  United States District Judge